IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| DON C. WILSON, | |
|---|---|
| Petitioner, | No. 2:06-cv-02006-JKS |
| vs. | MEMORANDUM DECISION |
| D. K. SISTO, | |
| Respondent. | |

I.  BACKGROUND

Don C. Wilson, a state prisoner proceeding *pro se*, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254.  Petitioner is currently serving a term of seven years to life in the custody of the California Department of Corrections and Rehabilitation at the California State Prison, Solano.  In November 1972, following a trial by jury, Petitioner was convicted of first degree murder, with two prior felonies and the use of a firearm during a robbery.  Cal. Pen. Code §§ 187, 12202.5.  After reviewing the petition and accompanying documents the Court has determined that the matter may be decided on the face of the petition and the attached exhibits alone.  *See* Rules Governing Section 2254 Cases in the United States District Court, Rule 4.

Petitioner has had several hearings before the California Board of Parole Hearings.  On March 17, 2006, a panel of the Board of Parole Hearings held a hearing *in absentia* at which it denied Petitioner's request to set a parole date and set the date for the next hearing on suitability for parole four years in the future.[1]  That decision became final July 15, 2006.  Petitioner filed his petition for relief in this Court on September 1, 2006.[2]  On April 20, 2007,  Petitioner filed a

---

[1] The record indicates Petitioner voluntarily declined to appear before the panel.

[2] Although the original petition shows a filing date of September 7, 2006, the petition was signed on September 1, 2006.  Applying the "mail box" rule and, in the absence of evidence to the contrary, the Court assumes that the petition was handed to prison officials for mailing to the court on the date that it

(continued...)

petition for a writ of habeas corpus in the California Supreme Court, which was summarily denied September 12, 2007, without opinion or citation to authority.[3] On October 5, 2007, Petitioner filed his Amended Petition.[4]

## CALIFORNIA BOARD OF PAROLE HEARINGS

## D E C I S I O N

**PRESIDING COMMISSIONER SAWYER**: The time is 12:30, and everyone has returned to the room that was here before in the case of Mr. Don Wilson. First of all let's talk about the commitment offense, a man was gunned down on the streets of San Francisco, Mr. Darnell Niffenegger. He was found laying on the sidewalk. The police responded and they turned his body over and observed a bullet wound in the chest area of his heart, and he was dead when police arrived. Don Wilson was arrested on July 17, 1972. The police officers received information that a gun had been hidden in the men's restroom on Ellis Street in San Francisco and they responded. And the weapon was later proved to be the weapon that killed Mr. Niffenegger, and he was age 41 at the time of his killing and his robbery. Mr. Wilson was found guilty of robbing and killing and found guilty in the first-degree. This was certainly carried out in an especially cruel and callous manner. The victim was left at the scene to die. The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering. The motive for the crime was robbery and, certainly, to take a man's life for his property is inexplicable. Mr. Wilson does have a record of violence of criminal behavior, criminal conduct in his past. He certainly had an unstable, tumultuous upbringing. At age 14 he was placed in a Boy's Ranch for burglary, and he dropped out of school in the tenth grade at age 16. He has never served in the military. He worked as a room service attendant. He has fathered no children. And he has an adult conviction and arrest record: in 1964, Houston, Texas, theft, he did some time in the county jail; also Galveston, Texas, in 1968, burglary, did five years in prison; in 1969, he apparently did not do his entire years in Galveston, because the next year he got into trouble again with a theft in Dallas, Texas, and did three years in prison; and then he got five

---

[2](...continued)
was signed by Petitioner.

[3] Although the petition filed with the California Supreme Court is not part of the record, for the purpose of deciding the petition before this Court it is assumed, but not decided, that Petitioner raised the same issues before the California Supreme Court as raised in the amended petition before this Court. It is also assumed, but not decided, that the California Supreme Court denied the petition on the merits, not on procedural grounds.

[4] For the purpose of deciding the petition before this Court it is assumed, but not decided, that the amended petition relates back to the date the original petition was filed.

years to life for the present commitment.  So, he has failed to profit from society's previous attempts to correct his criminality in the area of juvenile camp, county jail, as well as adult probation, and prior prison terms.  His institutional behavior, he has had 35 115s, the last being just months ago, with comments of a sexual nature to employees; on 10/19/05, stalking a female employee in the institution; 8/10/05, behavior that perhaps could bring on violence; and 8/13/03 are just the last three between the last Hearing and now.  He was told at the last Hearing to, of course, remain disciplinary free and he did not.  And he has 36 128s, the last one being 2003, again, not discipline free.  He has up until '03, he had been attending some AA and NA.  He did get his GED in 1991.  He did attend some Breaking Barriers classes recently.  He is currently not working and is in Ad Seg for his discipline problems and he has very little to speak for.  The programming and self-help, he has certainly failed to develop any marketable skills and is not participating at this time, and hasn't in the last couple of years, in beneficial self-help or therapy programs.  He continues to display negative behavior while incarcerated.  And I guess we can say, it is safe to say that he is moving backwards in his behavior, self -help and programming.  The psychological report is not favorable.  This particular one was done on 2/16/06, the latest report, by Dr. Michelle Lynn Inaba, I-N-A-B-A, PhD, contract psychologist.  Mr. Wilson within a controlled setting has -- she recognizes the 35 disciplinary write-ups during his present term of incarceration.  She, also, indicates that "within a controlled setting, based on his history including the prior mentioned infractions, Mr. Wilson is likely to violate the rights of others, but poses a little risk in a controlled or supervised setting.  If released to the outside community he has a limited history of criminal offense prior to his arrest on the controlling case.  He was convicted of car theft in '64; auto-theft and burglary in '68," and I've talked about those, "and theft in '69 in Texas.  Mr. Wilson did engage in criminal activity prior to his commitment offense, and none of his prior offenses involved the use of a weapon.  I find it interesting that when asked if he was a lover rather than a fighter, he stated that he was both.  He discussed his history of exposure to violence and violent behavior.  He was not abused as a child and did not witness domestic abuse in the home environment.  His history indicates that Mr. Wilson has shown that he has a capacity for violent behavior.  And he did not have a pattern of violent behavior or violent crime.  His behavioral focus was on financial gain and social sexual encounters with women.  Mr. Wilson has several dynamic factors known to be related to recidivism for violence.  He tends to see himself as a victim.  He expresses anger about his conviction and his incarceration.  Recent CDC rules violations show a lack of empathy for others.  His behavior in these matters could be characterized as impulsive.  Mr. Wilson must have been aware that it was inappropriate to make comments of a sexual nature to staff.  Risk factors in his case would be association with a criminal element, loss of financial support or any abuse of alcohol or drugs.  He would be expected to experience stress in a change of living circumstances from institutional living to life in the

MEMORANDUM DECISION
*Wilson v. Sisto*, 2:06-cv-2006-JKS            3

community.  He is a hedonistic individual who seeks to satisfy his own pleasure without sufficient regard for the rights of others." She, also, indicates in here that he would benefit from participation in programs aimed at developing more pro-social values and attitudes, which he has not done.  And finally "Mr. Wilson's adult life, all of his adult life he has had his basic needs for food and housing met by others.  He has no experience of self support or discipline necessary to succeed in society."  I think that we can say that this was an unfavorable psychological report.  Parole plans, he indicates that he would live with a woman in San Francisco, and he gives her name and address, but he has no documents supporting that.  He also indicates that if he could go to Houston, Texas, he would live with is [*sic*] mother, and he has family and friends there, and there is no confirmation of any employment.  There are no letters in his file of support whatsoever.  We heard from the San Francisco Deputy District Attorney, Mr. Cashman, who is opposed to a parole date at this time.  The Panel makes the following findings, the prison [*sic*] needs therapy and self-help in order to face, discuss, understand, and cope with stress in a non-destructive manner.  Until progress is made he continues to be unpredictable and a threat to others.  The prisoner's gains, he has no gains, he has actually gone backwards.  He has three 115s in the last reporting period, and although they have not been assaultive in nature, two of them are sexual in nature and one of them could have caused assaultive behavior.  He also had negative behavior, certainly the negative behavior is illustrated by 35 115s.  But most importantly is the last three, two being in the last year.  Normally at this time would commend the inmate in areas that they have done.  I guess I can commend Mr. Wilson at this point for his Breaking Barriers program and his participation in AA and NA up to the year 2003, and I'm afraid that's all I can.  However, these positive aspects of his behavior does not outweigh his factors of unsuitability.  In a separate decision, the Hearing Panel finds the prisoner has been convicted of murder in the first-degree, and it is not reasonable to expect parole would be granted at a Hearing during the next four years, that's four years.  The commitment offense certainly was considered, where he killed a 41 year-old man on the streets of San Francisco for a robbery, he was shot in the chest and he was left to die.  That's especially cruel and callous.  The other areas in a separate decision is certainly his behavior.  He has not remained disciplinary free, he has received two 115s in the last year, both sexual in nature, comments of a sexual nature to an employee and stalking a female employee in the prison.  He has, also, had one 115 in 8/13/03, behavior perhaps that would bring on some violence.  Additionally, in the separate decision, he has a very, very poor  psychological report and as I mentioned and read some of it.  He is just a very selfish kind of guy and everything is about him and he has become the victim in this case, and he is not moving forward.  He has no other areas of self-help, he is not doing any self-help. Currently he can't do anything, he cannot work or do any self-help because he is currently in Administrative Segregation.  He has no marketable skills and in the area of his

parole plans he has no letters of support and no offers of employment. That concludes this Hearing, the time is 12:41. Good luck to you, Mr. Wilson.

## II.  STANDARD OF REVIEW

Because Petitioner filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d).  Consequently, this Court cannot grant relief unless the decision of the California Supreme Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).  AEDPA's deferential standard of review under 28 U.S.C. § 2254(d) is inapplicable, however, because there was no reasoned state court decision.  The Board of Parole Hearings Office of Policy and Appeals is an administrative body not entitled to deference under AEDPA.  *See Rosas v. Nielsen,* 428 F.3d 1229, 1231-32 (9th Cir. 2005).  This Court must review the last state court decision that adjudicated Petitioner's claims on the merits.  Here, that is the decision of the California Supreme Court, which did not provide any reasoning to support its denial of relief.  Therefore, this Court must  "independently review the record to determine whether the state court clearly erred in its application of Supreme Court law," *Pirtle v. Morgan,* 313 F.3d 1160, 1167 (9th Cir. 2002), "through the 'objectively reasonable' lens ground by *Williams,*" *Delgado v. Lewis,* 223 F.3d 976, 982 (9th Cir. 2000) (construing *Williams,* 529 U.S. at 400).  When there is no reasoned state court decision denying an issue presented to the state court and  raised in a federal habeas petition, this Court must assume that the state court decided all the issues presented to it and perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.  *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

To the extent that Petitioner raises issues of the proper application of State law, they are beyond the purview of this Court in a federal habeas proceeding.  It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.  *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).  It is also presumed that the state court knew

and correctly applied state law. *See Walton v. Arizona,* 497 U.S. 639, 653 (1990) *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law).

### III.  ISSUES RAISED

Petitioner challenges the decision of the California Board of Parole Hearings that he was not suitable for parole. In his petition Petitioner raises five grounds:

1. He was denied due process of law because there was a lack of an evidentiary basis for the decision and the Board impermissibly relied upon the nature of his offense as a basis for denial;

2. The Board must set a release date under California law;

3. The Board did not follow its guidelines in making its parole suitability determination;

4. Petitioner's positive efforts during his incarceration outweigh the negative factors; and

5. Application of the regulations under California's Determinative Sentencing Law ("DSL") to Petitioner, who was originally sentenced under California's Indeterminate Sentencing Law ("ISL"), is a violation of the *ex post facto* clause of the United States Constitution.

### IV.  DISCUSSION

A. **Grounds 2, 3, and 4: State Law Grounds**.

Petitioner's second, third, and fourth grounds are based upon the interpretation and application of California state law. They do not, on their face, implicate any issues of federal law. As such, as noted above, those grounds are beyond the purview of this Court in a federal habeas proceeding.

Accordingly, Petitioner is not entitled to relief under the second, third, and fourth grounds.

B. **Ground 1: Denial of Due Process**.

Petitioner's contention that he was denied due process because the "conclusions reached and factors relied on by the Board were devoid of evidentiary basis," *Biggs v. Terhune,* 334 F.3d 910, 915 (9th Cir. 2003), lacks merit. Petitioner focuses on a single factor, the nature of his

crime, as being the basis for denial of parole; however, the Board decision as to Petitioner demonstrates that the Board tailored its decision to the totality of Petitioner's individual circumstances. While continued reliance on the unchanging circumstances of Petitioner's offense, standing alone, may have implicated his liberty interest in parole, *id.* at 916, that did not happen in the course of the Board's 2006 parole denial. The Board's decision itself belies any contention by Petitioner that there was a lack of relevant evidentiary basis for its action. In addition to the specific offense of which he was convicted, the Board considered: lack of participation in therapy and self-help programs; his unfavorable psychological evaluation; his recent disciplinary record; his lack of marketable skills; the lack of any supporting documentation concerning his parole plans; lack of any documentation evidencing employment if released; and the opposition of the district attorney. These unquestionably constitute "'some evidence' having 'some indicia of reliability.' " *McQuillion v. Duncan,* 306 F.3d 895, 904 (9th Cir.2002) (applying standard outlined by the Supreme Court in *Superintendent v. Hill,* 472 U.S. 445, 455 (1985)).

Thus, the Board did not deny Petitioner due process, and he is not entitled to relief on the first ground.

### C.   **Ground 5:** *Ex Post Facto*

It is unclear whether Petitioner is making both facial and "as applied" *ex post facto* clause challenges under *Garner v. Jones,* 529 U.S. 244 (2000). To the extent that Petitioner is making a facial challenge, it fails because this Court is bound by the decision in *Connor v. Estelle,* 981 F.2d 1032, 1033–34 (9th Cir. 1992), which held that "the DSL guidelines require consideration of the same criteria as did the ISL." Petitioner's "as applied" challenge fails because he proffers no evidence to demonstrate that the application of the ISL guidelines creates a significant risk of increasing his punishment given his unique circumstances. *Garner,* 529 U.S. at 255–56. Petitioner not only fails to demonstrate a significant risk of increased incarceration under the DSL guidelines, but parole is a discretionary function and "discretion, by its very definition, is subject to changes in the manner in which it is informed and then exercised." *Garner,* 529 U.S. at 253.

Petitioner is not entitled to relief on the fifth ground.

V.  CONCLUSION and ORDER

Accordingly, because Petitioner is not entitled to relief under any claim asserted, the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DISMISSED**.

**IT IS ORDERED THAT** the Court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotation marks and citations omitted)); *Hoffman v. Arave*, 455 F.3d 926, 943 (9th Cir. 2006) (same).  All federal constitutional issues were deemed addressed by the California Supreme Court in denying Petitioner's writ before that court, and no reasonable jurist could find that the decision was "objectively unreasonable."

The Clerk of the Court shall enter final judgment accordingly.

Dated:  December 13, 2007.

                                                s/ James K. Singleton, Jr.
                                                JAMES K. SINGLETON, JR.
                                                United States District Judge